UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENJAMIN HEETER and FIREARMS POLICY
COALITION, INC.,

                Plaintiffs,

vs.

STEVEN G JAMES, LETITIA JAMES and
MICHAEL J. KEANE all in their official
capacities,

                Defendants.

Case No. 24-CV-00623-JLS

**MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION TO RANDOMLY REASSIGN THIS CASE**

                LETITIA JAMES
                Attorney General of the State of New York
                RYAN BELKA
                Assistant Attorney General, of Counsel
                Main Place Tower, Suite 300A
                350 Main Street
                Buffalo, New York 14202
                Tel: (716) 853-8440

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS**......................................................................................................... 2

**ARGUMENT**................................................................................................................................ 4

**POINT I  THIS LITIGATION IS NOT "RELATED" TO** *CHRISTIAN, HARDAWAY OR SPENCER* **UNDER LOCAL RULE 5.1(e)** ................................................................................... 4

**POINT II  GUIDANCE FOR CIVIL CASE ASSIGNMENT IN DISCTRICT COURT CUTS AGAINST THIS COURT'S PRIOR REASONING ON RELATED CASES**............. 9

**CONCLUSION** ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

Christian et al. v. Bruen, et al., Case No. 22-cv-00695 (W.D.N.Y.) ...................................... 5, 2, 3

Committee on Judiciary v. McGahn, 391 F. Supp. 3d 116, 118 (D.D.C. 2019)..................... 5, 6, 7

Hardaway et al. v. Bruen, et al., Case No. 22-cv-00771 (W.D.N.Y.).................................... 5, 2, 3

J&K Prods., LLC v. Small Business Administration, Case No. 21-3227, 2022 WL 703835, at *4
   (D.D.C. March 9, 2022) ............................................................................................... 7

Ligon v. City of New York, 736 F.3d 118, 125-26 (2d Cir. 2013)................................................ 6

NYSRPA v. Bruen, 142 S. Ct. 2111 (2022) ................................................................................. 8

Paladino, et al. v. Bruen, et al., 22-CV-541 (W.D.N.Y.) ............................................................ 3

Rite-Aid Corp. v. American Exp. Travel Related Servs. Co., Inc., 2008 WL 3155063, at *5
   (E.D.N.Y. Aug. 4, 2008) .............................................................................................. 7

Spencer, et al. v. Bruen, et al., Case No. 22-cv-06486 (W.D.N.Y.) ....................................... 5, 2, 3

Tripp v. Executive Office of the President, 196 F.R.D. 201, 203 (D.D.C. 2000) ......................... 7

Ukrainian National Association of Jewish Former Prisoners of Concentration Camps & Ghettos
   v. United States, 205 F.R.D. 102, 104 (E.D.N.Y. 2001)......................................... 5, 6

United States v. Rahimi, 144 S.Ct. 1889 (2024)........................................................................... 8

**Other Authorities**

Marcel Kahan and Troy A. McKenzie, Judge Shopping, 13 J. Legal Analysis 341, 342 .............. 5

**Rules**

E.D.N.Y. Local Rule 50.3.1............................................................................................................ 5

E.D.N.Y. Local Rule 50.3.1(a) ....................................................................................................... 5

S.D.N.Y. Rule for Division of Business Among District Judges 13(a)(1) ..................................... 5

W.D.N.Y. Local R. 5.1(e) ................................................................................................. 5, 4

Defendant Steven G. James, sued in his official capacity as Superintendent of the New York State Police and Letitia James, sued in her official capacity as Attorney General for the State of New York, respectfully submit this memorandum of law in support of their motion for an order declaring this litigation to be unrelated to <u>Christian et al. v. Bruen, et al.</u>, Case No. 22-cv-00695 (W.D.N.Y.), <u>Hardaway et al. v. Bruen, et al.</u>, Case No. 22-cv-00771 (W.D.N.Y.), and <u>Spencer, et al. v. Bruen, et al.</u>, Case No. 22-cv-06486 (W.D.N.Y.) and directing that the case be randomly reassigned pursuant to the Western District of New York's ("Western District") district-wide judicial assignment procedures and in accordance with the Guidance for Civil Case Assignment in District Courts.

## PRELIMINARY STATEMENT

As a general rule, cases filed in federal court "are randomly assigned in order to ensure greater public confidence in the integrity of the judicial process, guarantee fair and equal distribution of cases to all judges, avoid public perception or appearance of favoritism in assignment, and reduce opportunities for judge-shopping." <u>Committee on Judiciary v. McGahn</u>, 391 F. Supp. 3d 116, 118 (D.D.C. 2019). In the interest of judicial economy, District Courts have adopted local rules creating an exception for "related cases." *See e.g.* W.D.N.Y. Local R. 5.1(e). Under those rules, a plaintiff may designate a case as related to an earlier-filed action and have the new case assigned to the same judge responsible for the earlier-filed action. While these "related case" rules generally promote judicial economy, they can also be abused by parties for perceived tactical advantage—as Plaintiffs have done here. *See* Marcel Kahan and Troy A. McKenzie, <u>Judge Shopping</u>, 13 J. Legal Analysis 341, 342 ("Savvy litigators appreciate the advantages that might come from 'shopping' for a particular judge by the use of a local rule on the assignment of related cases-and sometimes that use can stretch well beyond the ordinary bounds of housekeeping.").

In this litigation, Plaintiffs challenge the constitutionality of New York's general prohibition against purchase or sale of body armor. This case is currently before this Court because Plaintiffs designated the case as being related to <u>Christian</u>, <u>Hardaway</u>, and <u>Spencer</u>. Those cases challenged the constitutionality of New York's prohibition on the carrying of firearms in places of worship, in public parks, on public transportation, and on private property (unless explicitly permitted by the property owner). Importantly, these cases do not challenge the prohibition against purchase or sale of body armor, the only measure at issue in this action.

Although both the instant litigation and those cited as related challenge the scope of the Second Amendment as it relates to certain of New York's laws, importantly, they challenge *different* laws, under different statutory sections or subsections, that are subject to differing analyses. Therefore, they are not "related" for purposes of Local Rule 5.1(e), in the same way that not all First Amendment nor all 42 U.S.C. § 1983 cases are related. This litigation should have been assigned pursuant to the Western District's standard judicial assignment procedures instead of being deemed related to the <u>Christian</u>, <u>Hardaway</u>, or <u>Spencer</u> cases.[1]

## STATEMENT OF FACTS

On September 13, 2022, Brett Christian, the Firearms Policy Coalition, Inc., and the Second Amendment Foundation (collectively, the *"<u>Christian</u> Plaintiffs")* commenced an action challenging, under the Second Amendment, the constitutionality of New York's general prohibition on the carrying of firearms in public parks, on public transportation, and on private property, unless explicitly permitted by the property owner. <u>Christian, et al. v. Bruen, et. al.</u>*,* 22-cv-695; [ECF No. 1] ¶ 37. In filing the action, the <u>Christian</u> Plaintiffs designated the case as

---

[1] The State contacted the Western District of New York's Clerk's Office to determine whether this case was assigned to the Honorable John L. Sinatra, Jr. pursuant to the Western District's standard judicial assignment procedures or as related to cases identified as related. The Clerk's Office represented that it was assigned due to its relatedness as represented on the Civil Action Cover Sheet [ECF No. 1-1].

related to Paladino, et al. v. Bruen, et al., 22-CV-541 (W.D.N.Y.). (See [ECF No. 1-2]). Paladino challenged the New York prohibition on private property under the First, Second, Fifth, and Fourteenth Amendments and had been assigned to this Court. (See Paladino, [ECF No. 5], ¶ 49. Based on the relatedness designation, Christian was eventually assigned to Judge Sinatra as well. Shortly thereafter, the Christian Plaintiffs filed a motion for a preliminary injunction seeking to enjoin the Christian Defendants from enforcing the challenged provisions during the pendency of the case. Christian, ECF No. 19.

One month later, Jimmie Hardaway, Jr., Larry A. Boyd, the Firearms Policy Coalition, Inc., and the Second Amendment Foundation[2] (collectively, the "Hardaway Plaintiffs") commenced litigation challenging, under the Second Amendment, the constitutionality of New York's general prohibition on carrying firearms in places of worship. (ECF No. 1] ¶ 33). Although the Hardaway case was brought by different individual plaintiffs and does not challenge any of the provisions at issue in Christian, the Hardaway Plaintiffs designated the case as "related" to the Christian litigation. Civil Action Cover Sheet, [ECF No. 1-2] at p. 1. Although the State challenged the relatedness of Hardaway to Christian, this case was also assigned to Judge Sinatra. See n. 7 infra.

Shortly after Hardaway was filed, His Tabernacle Family Church, Inc. and Michael Spencer (collectively, the "Spencer Plaintiffs") commenced the instant lawsuit challenging, under the Second Amendment, the constitutionality of New York's general prohibition on carrying firearms in places of worship (ECF No. 1, ¶ 30). The Spencer Plaintiffs designated the case as "related" to the Hardaway litigation, which challenged the same statute, and this case was also assigned to Judge Sinatra.

---

[2] Notably, one of the organizational Plaintiffs is the same. See ECF No. 29 & 32.

3

The three cases that Plaintiffs have identified as related involved certain provisions of New York's Concealed Carry Improvement Act and whether those provisions violated the Second Amendment.[3] All were "sensitive places" cases under the Second Amendment. The case before this Court involves two sections of the Penal Law and one section of the General Business Law and asks this court to determine whether New York's prohibition on purchase and sale of body armor violates the Second Amendment. Importantly, New York's Concealed Carry Improvement Act and sensitive places are not part of the instant litigation. Christian, Hardaway and Spencer are unrelated to this case before this court. This Court should require that this case be reassigned on a district-wide basis through the standard assignment process in the Western District of New York. See Point II infra.

## ARGUMENT

## POINT I

### THIS LITIGATION IS NOT "RELATED" TO *CHRISTIAN, HARDAWAY OR SPENCER* UNDER LOCAL RULE 5.1(e)

W.D.N.Y. Local Rule 5.1(e) addresses the judicial assignment of "related cases." It provides:

> **Related Cases**. Each attorney appearing in a civil case has a continuing duty to notify the Clerk promptly when the attorney has reason to believe that said case is related to some other pending civil or criminal action(s) such that its assignment to the same Judge would avoid unnecessary duplication of judicial effort. As soon as the attorney becomes aware of such a relationship, the attorney shall notify the Clerk of the Court by letter of the relevant facts, and the Clerk of the Court will transmit that notification to the Judges to whom the cases have been assigned.

The Western District Local Rules do not define "related cases." The Local Rules of the Eastern and Southern Districts of New York, however, do define the term and are instructive. In the Eastern District,

---

[3] Spencer also had a First Amendment claim.

4

> [a] civil case is 'related' to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge.

E.D.N.Y. Local Rule 50.3.1(a).  Similarly, in the Southern District,

> in determining relatedness, a judge will consider whether (A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses.

S.D.N.Y. Rule for Division of Business Among District Judges 13(a)(1).  Importantly, in both the Eastern and Southern Districts, civil cases "shall not be deemed related merely because they involve common legal issues or the same parties."  *Id.* at 13(a)(2)(A); see also E.D.N.Y. Local Rule 50.3.1 ("A civil case shall be not deemed 'related' to another civil care merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties.").[4]

Federal courts repeatedly emphasize that the related case rule must be narrowly construed, and that cases should be randomly assigned absent exceptional circumstances.  In <u>Ukrainian National Association of Jewish Former Prisoners of Concentration Camps & Ghettos v. United States</u>, 205 F.R.D. 102, 104 (E.D.N.Y. 2001), the Eastern District applied E.D.N.Y. Local Rule 50.3 to hold that an action seeking compensation for injuries inflicted by Nazis had been improperly designated as related to a case seeking compensation for injuries from Agent Orange, and directed that it be reassigned to a randomly selected judge.  There, the plaintiffs designated the case as related to another action "because of a similar legal issue raised in both

---

[4] In the Northern District the governing document is General Order 12, which defines a case as related "when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning the cases to the same Judge and Magistrate Judge." NDNY General Order 12 s (G)(2). The NDNY likewise says that "A civil case shall not be deemed related to another civil case merely because the civil case: (a) involves similar legal issues, or (b) involves the same parties." NDNY General Order 12 s (G)(3)

5

litigations—whether a settlement of a class action can be collaterally attacked." Id. The Eastern District held that the case was not related to the Agent Orange cases because "[s]imilar legal issues alone will generally not support assignment to the same judge." Id.; see also Ligon v. City of New York, 736 F.3d 118, 125-26 (2d Cir. 2013) (noting in other circumstances that "the appearance of impartiality [was] compromised" by a judge improperly taking on a case as related).

Applying a similar rule, the District of Columbia held that two cases were not related for purposes of judicial assignment in Committee on Judiciary v. McGahn, 391 F. Supp. 3d 116, 122 (D.D.C. 2019). There, the House Judiciary Committee filed a complaint seeking testimony from Donald McGahn, former White House Counsel, in connection with its investigation to determine whether to recommend articles of impeachment against President Donald Trump. Id. at 117. The Committee designated the case as related to another case in which the Committee had sought the release of grand jury materials for its impeachment investigation. In support of relatedness, the Committee argued that both cases concerned the same Committee investigation being conducted pursuant to the same legal authorities and for the same purpose of obtaining evidence to assess articles of impeachment. Id. at 119.

The court rejected this argument for three reasons. First, the court held that the two cases did not involve common issues of fact. The McGahn subpoena case was a congressional subpoena enforcement action raising various issues involving immunity, privilege, and waiver, while the prior case was an ancillary grand jury action requesting release of criminal grand jury materials. Second, the two actions implicated different types of evidence. Third, the McGahn subpoena case and grand jury case did not grow out of the same event or transaction. The

subpoena case arose out of the Committee's effort to enforce a congressional subpoena while the grand jury case grew out of the Committee's efforts to obtain grand jury materials. Id. at 120.

Other courts have routinely randomly reassigned cases that were improperly designated as related to earlier filed cases. See Tripp v. Executive Office of the President, 196 F.R.D. 201, 203 (D.D.C. 2000) (holding that related case designation was not justified where only an overlap of discovery created the appearance of commonality between the cases); J&K Prods., LLC v. Small Business Administration, Case No. 21-3227, 2022 WL 703835, at *4 (D.D.C. March 9, 2022) (three separate lawsuits challenging agency's denial of grant applications did not involve common property or common facts and thus were not "related cases"); Rite-Aid Corp. v. American Exp. Travel Related Servs. Co., Inc., 2008 WL 3155063, at *5 (E.D.N.Y. Aug. 4, 2008) (holding that although two cases had some common plaintiffs and involved antitrust claims relating to payment cards, the cases involved different factual and legal issues and were thus not related).

Under the principles espoused in these prior authorities, this lawsuit is not "related" to the Christian, Hardaway or Spencer litigations. They are ultimately not related for purposes of Local Rule 5.1(e) because they challenge entirely different laws, arise out of different transactions or events, and concern different individual plaintiffs.[5] That both cases sound in the Second Amendment is not enough to make them "related" for the purpose of judicial assignment.

The substantive analyses will also be different. As this Court is aware, under NYSRPA v. Bruen, 142 S. Ct. 2111 (2022), a restriction on the constitutionally protected carrying of firearms will comport with the Second Amendment if it is "consistent with this Nation's historical tradition of firearm regulation," Bruen, 142 S. Ct. at 2126, or "relevantly similar" to

---

[5] Additionally, the mere fact that this litigation and the Christian litigation have the same institutional plaintiffs is not sufficient for a relatedness designation. See E.D.N.Y. Local Rule 50.3.1.

7

historical precursors, Id. at 2132. Under this test, this Court will need to compare modern regulations restricting the right to carry firearms to historical analogues. The comparative analysis in this case will be different than in Christian, Hardaway or Spencer. Here, if the Plaintiffs can demonstrate that the plain text of the Second Amendment covers body armor, a point not at issue in any prior case, the Court will be tasked with reviewing historical restrictions relevant to body armor. Conversely, in Christian, Hardaway, and Spencer the Court was tasked with reviewing historical analogues concerning carriage provisions in places of worship, public transportation, parks, and private property.

Moreover, the substantive analysis conducted in this case will be at least somewhat different due to the Supreme Court's intervening decision in United States v. Rahimi, 144 S.Ct. 1889 (2024), which further clarified the Bruen standard, emphasizing that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791," and that to be constitutional, a law simply needs to "comport with the principles underlying the Second Amendment." Id. at 1897-98. The analysis of why New York's current provisions favorably compare (or, as Plaintiffs contend, unfavorably compare) to their legislative ancestors will necessarily be site and case-specific. Because of the lack of overlap in analysis, having a single judge determine both cases will not result in a saving of judicial time and resources.

Accordingly, the Court should hold that the body armor litigation before this Court is not related to the sensitive places litigations in Christian, Hardaway, and Spencer, and that this case

should be reassigned pursuant to the Western District of New York's normal random judicial assignment procedures.[6]

## POINT II

### GUIDANCE FOR CIVIL CASE ASSIGNMENT IN DISCTRICT COURT CUTS AGAINST THIS COURT'S PRIOR REASONING ON RELATED CASES

The same conclusion is required under guidance recently issued by the Judicial Conference of the United States, chaired by Chief Justice Roberts and consisting *inter alia* of the chief judges of each judicial circuit. Attached hereto as **Exhibit A** is a guidance document from the Judicial Conference Committee on Court Administration and Case Management. That guidance document reiterates "longstanding policies supporting the random assignment of cases and ensuring that district judges remain generalists deter both judge-shopping and the assignment of cases based on the perceived merits or abilities of a particular judge." Ex. A at p. 1. Moreover, the guidance document notes that "District courts should apply district wide assignments to… civil actions seeking to bar or mandate statewide enforcement of a state law." Id.

In a prior challenge to the relatedness designation between the Christian and Hardaway case, this court reasoned that its particular expertise in applying Second Amendment analysis in Bruen would "avoid [an] unnecessary duplication of judicial effort."[7] This court's analysis,

---

[6] The State's objection is not to the assignment of any specific judge, but rather to the Plaintiffs' misuse of the related case rule. If the same judge is assigned to this litigation pursuant to the Western District's standard random judicial assignment procedures, the State will have no objection. See also Point II.

[7] "TEXT ORDER denying 29 Motion to Reassign Case by Kevin P. Bruen. Rule 5.1(e) of the Local Rules of Civil Procedure permits assignment of related cases to the same judge where such assignment "would avoid unnecessary duplication of judicial effort." Here, the same detailed analysis of, and close familiarity with, the Supreme Court's Heller, McDonald, and Bruen decisions spans this case and Christian et al. v. Bruen, et al., No. 22-cv-00695 (W.D.N.Y.). Related case assignment creates a significant time savings in this scenario. Moreover, there may be some overlap on the standing issue. Although the particular subsections of the statute may differ, many parts of the analytical approach may carry over from one case to the other. The motion to reassign is therefore denied. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 10/20/2022. (KLH) (Entered: 10/20/2022)

9

essentially that it has expertise in Second Amendment analysis is inconsistent with the Judicial Conference Committee on Court Administration and Case Management's guidance on this issue. Because this case clearly intends to "bar or mandate enforcement of a statewide law," in this case New York's body armor restrictions, the guidance suggests that the reassignment of the instant case should be district-wide, considering all available judges in the Western District of New York when doing so.

## CONCLUSION

For the foregoing reasons, the Court should grant the State's motion and randomly reassign this case on a district-wide basis pursuant to the Western District's standard judicial assignment procedures.

Dated:   July 16, 2024
Buffalo, New York

                                LETITIA JAMES
                                Attorney General of the State of New York
                                Attorney for Defendants
                                BY: /s/ *Ryan L. Belka*
                                    Ryan L. Belka
                                Assistant Attorney General of Counsel
                                Main Place Tower, Suite 300A
                                350 Main Street
                                Buffalo, NY 14202
                                (716) 853-8440
                                Ryan.Belka@ag.ny.gov



A

GUIDANCE FOR CIVIL CASE ASSIGNMENT IN DISTRICT COURTS[1]

BACKGROUND

The Judicial Conference's longstanding policies supporting the random assignment of cases and ensuring that district judges remain generalists[2] deter both judge-shopping and the assignment of cases based on the perceived merits or abilities of a particular judge.

The tools used to accomplish random case assignment are a court's divisional and judicial case assignment methods employed pursuant to 28 U.S.C. § 137. Under 28 U.S.C. § 137(a), "[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court."[3] This statute provides individual courts wide latitude to establish case assignment systems, permitting flexibility in managing their caseloads efficiently and in a manner that best suits the various needs of the district and the communities they serve. The chief judge is "responsible for the observance of such rules and orders" and is charged with "divid[ing] the business and assign[ing] the cases so far as such rules and orders do not otherwise prescribe." The statute also provides that "[i]f the district judges in any district are unable to agree upon the adoption of rules or orders for that purpose the judicial council of the circuit shall make the necessary orders." Additionally, 28 U.S.C. § 332(d)(1) provides that "each [circuit] judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit."

At its March 2024 session, the Judicial Conference, upon recommendation of the Committee on Court Administration and Case Management (CACM), approved the following policy regarding case assignment practices:[4]

District courts should apply district-wide assignment to:

a. civil actions seeking to bar or mandate statewide enforcement of a state law, including a rule, regulation, policy, or order of the executive branch or a state agency, whether by declaratory judgment and/or any form of injunctive relief; and

b. civil actions seeking to bar or mandate nationwide enforcement of a federal law, including a rule, regulation, policy, or order of the executive branch or a federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

[1] Issued March 2024, by the Judicial Conference Committee on Court Administration and Case Management.

[2] *See* JCUS-SEP 1995, p. 46; JCUS-MAR 1999, p. 13; JCUS-MAR 2000, p. 13.

[3] The division of the business of the courts is not solely accomplished through rules and orders. There are a variety of practices and policies utilized to accomplish this objective.

[4] JCUS-MAR 2024, p. ___.

GUIDANCE FOR CIVIL CASE ASSIGNMENT IN DISTRICT COURTS

The guidance set forth below applies to all civil cases, including patent cases.[5] It does not apply to criminal cases as there are unique factors and considerations applicable to criminal cases that are not implicated in civil cases. Bankruptcy cases were not specifically considered in drafting the guidance. Case assignment in the bankruptcy context remains under study.

GUIDANCE

Courts are encouraged to conduct regular review of their civil case assignment practices, particularly courts with single-Article III judge divisions.

While recognizing the statutory authority and discretion that district courts have with respect to case assignment, and that the division of the business of the district court among the judges is accomplished through various case assignment practices, to assist with developing these practices and aligning them with Judicial Conference policy, the CACM Committee shares the following guidance:

1. Public confidence in the case assignment process requires transparency. Therefore, consider incorporating case assignment practices into rules and orders as opposed to internal plans or policies. To the extent a court currently maintains internal plans or policies, the court should make them accessible to the public on the court's website.

2. In crafting civil case assignment practices, consider various issues that generate concern, such as achieving randomness in assignments; ensuring the district judges remain generalists; balancing caseload among judges in the district; avoiding and addressing recusals, conflicts of interest, and appearances of impropriety; considering potentially disqualifying events impacting assignments, such as injury, illness, or incapacitation of a judge; managing related cases; and promoting the efficiency, convenience, and other benefits of parties' cases being heard by local judges.

3. Regardless of where a case is filed, avoid case assignment practices that result in the likelihood that a case will be assigned to a particular judge, absent a determination that proceeding in a particular geographic location is appropriate.

---

[5] The CACM Committee presented its "Report on the Patent Case Assignment Study in the District Courts" (Patent Report) to the Judicial Conference at its September 2023 session, and the Secretary of the Judicial Conference transmitted it to Congress on October 3, 2023. The Patent Report concluded that the most effective tools in achieving the shared goal of both Congress and the Judicial Conference of promoting random case assignment are the divisional and judicial case assignment practices and policies employed in dividing the business of a district court as contemplated by 28 U.S.C. § 137, which allows each district court to divide the business of the court in a way that best serves the district. The Patent Report also recognized that district courts utilize various practices and policies in dividing the business of the court to achieve randomness in the divisional and judicial assignment of cases, and specifically in single-Article III judge divisions. Given the complexities associated with case assignment, the CACM Committee concluded that guidance on achieving random case assignment would benefit courts and that regular review of case assignment plans should be encouraged.

GUIDANCE FOR CIVIL CASE ASSIGNMENT IN DISTRICT COURTS

4. Employ case assignment practices that successfully avoid the likelihood that a case will be assigned to a particular judge, such as:

   (a) District-wide assignment of all cases;

   (b) District-wide assignment of certain cases based on Nature of Suit code, case categories, or case-type; or

   (c) Shared case assignments between the judge in a single-judge division with a judge or judges in another division or divisions.

5. Judicial Conference policy states that district courts should apply district-wide assignment in civil actions seeking to bar or mandate statewide or nationwide enforcement of a state or federal law, including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.[6]

   The policy is applicable in instances when the remedy sought has implications beyond the parties before the court and the local community, and the importance of having a case heard by a judge with ties to the local community is not a compelling factor.

   To facilitate assignment and avoid circumvention of a district-wide assignment policy, courts should consider entering a standing or general order, or promulgating a local rule addressing the following:

   (a) If such relief is sought when the case is opened, note on the JS-44 (Civil Cover Sheet) in section "VI. CAUSE OF ACTION" that the remedy sought has implications beyond the parties before the court or that the case seeks to bar or mandate statewide or nationwide enforcement of a state or federal law.

   (b) If such relief is sought after the case is opened, require the party seeking such relief to prominently display such information in the case caption upon filing the motion.

   (c) Include in the court's case assignment practices a provision addressing the filing of an amended complaint.  For example, if an amended complaint or motion seeking such relief is filed within thirty (30) days of when the case is opened, or before significant steps have been taken in the action, the judge to whom the case is assigned should transfer the case back to the Clerk of Court for reassignment on the district-wide wheel.

---

[6] JCUS-MAR 2024, p. ___.

3

CONTACT INFORMATION

Questions or comments concerning this guidance and assistance in its implementation may be directed to Policy Staff to the Committee on Court Administration and Case Management.