UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BENJAMIN HEETER, MARK
BRAIMAN, JOSEPH WURTENBERG,
and FIREARMS POLICY COALITION,
INC.,

                Plaintiffs,

      v.

LETITIA JAMES, in her official
capacity as Attorney General of the
State of New York,
STEVEN G. JAMES, in his official
capacity as Superintendent of the New
York State Police,
MICHAEL J. KEANE, in his official
capacity as Acting District Attorney for
Erie County, New York,
WILLIAM G. GABOR, in his official
capacity as District Attorney for
Madison County, New York, and
SANDRA DOORLEY, in her official
capacity as  District Attorney for
Monroe County, New York

                Defendants.

_____

24-CV-623 (JLS)

**DECISION AND ORDER**

The Plaintiffs in this action—three individuals and an organization—seek to

enjoin the Attorney General of the State of New York, the Superintendent of the

New York State Police, and the District Attorneys of four counties in New York

State, from enforcing various provisions of the New York Penal Law and New York

1

General Business Law that restrict the purchase and sale of body armor. Before the Court are motions to dismiss. *See* Dkt. 29, 30. For the reasons below, the motions are DENIED.

**BACKGROUND**

## I.   PLAINTIFFS' COMPLAINT

Plaintiffs Benjamin Heeter ("Heeter") and Firearms Policy Coalition, Inc. ("FPC" or the "Organization") commenced this action on July 1, 2024 against Defendants Letitia James in her official capacity as Attorney General of the State of New York (the "Attorney General"), Steven G. James, in his official capacity as Superintendent of the New York State Police ("James"), and Michael J. Keane, in his official capacity as Acting District Attorney for Erie County, New York ("Keane"). Dkt. 1.

Following motions to dismiss, *see* Dkt. 12, 15, Plaintiffs filed an Amended Complaint naming two additional Plaintiffs—Mark Braiman ("Braiman") and Joseph Wurtenberg ("Wurtenberg").[1] *See* Dkt. 19. Plaintiffs also named two additional Defendants—William G. Gabor, in his official capacity as District Attorney for Madison County, New York ("Gabor") and Sandra Doorley, in her official capacity as District Attorney for Monroe County) ("Doorley"). *See id.*[2]

---

[1] Heeter, Braiman, and Wurtenberg are collectively referred to as the "Individual Plaintiffs."

[2] After Plaintiffs filed the Amended Complaint, the movants withdrew their motions to dismiss. *See* Dkt. 26, 27.

2

The Individual Plaintiffs are New York residents who "intend[] to exercise [their] right to keep and bear body armor for lawful purposes." *Id.* ¶¶ 48, 50, 52. Heeter "lives in Erie County, New York" and desires to purchase "Safe Life Defense Level IV armor, BulletSafe Level IV armor, or another body armor offering a similar level of protection." *Id.* ¶ 48. His "desire and intention to purchase body armor arose in large part from a close call he experienced in May 2020, as violent riots swept America's cities." *Id.* ¶ 49.

Braiman "lives in Madison County, New York," and seeks to purchase "Wonder Hoodie's Bulletproof Hoodie (NIJ-IIIA), Bulletproof Flannel Jacket (NIJ-IIIA), or other articles of bulletproof clothing offering a similar level of protection." *Id.* ¶ 50. His "desire and intention to purchase bulletproof outerwear stems in large part from rising crime levels in Downtown Syracuse, where his son lives and owns a home." *Id.* ¶ 51.

Wurtenberg "lives in Monroe County, New York." *Id.* ¶ 52. He would like to purchase "Safe Life Defense FRAS or HYPERLINE armor, or another body armor offering a similar level of protection." *Id.* Wurtenberg "has multiple reasons why he desires and intends to purchase body armor," including that he "works the graveyard shift as a 911 dispatcher in Downtown Rochester, which is a relatively high crime area, prone to random violence." *Id.* ¶ 53.

The Individual Plaintiffs are also members of FPC—the organizational Plaintiff here. *See id.* ¶¶ 8-10. FPC "is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County,

Nevada." *Id.* ¶ 11. It "works to create a world of maximal human liberty and freedom, and to promote and protect individual liberty, private property, and economic freedoms." *Id.* And the Organization seeks, among other things, "to protect, defend, and advance the . . . individual right to keep and bear arms, and protect, defend, and advance the means by which individuals may exercise the right to carry, possess, and use firearms." *Id.*

According to Plaintiffs, Defendants have enforced a "flat prohibition on the purchase and sale of the most common and ergonomic body armors by ordinary citizens." *Id.* ¶ 2. And as a result, the Individual Plaintiffs are "unable to purchase body armor in New York"—despite its "obvious benefits." *Id.* ¶ 54. Specifically, Plaintiffs challenge the following statutory provisions—two criminal and one civil:

- N.Y. PENAL LAW § 270.21: A person is guilty of the unlawful purchase of body armor when, not being engaged or employed in an eligible profession, they knowingly purchase or take possession of body armor. . . . Unlawful purchase of body armor is a class A misdemeanor for a first offense and a class E felony for any subsequent offense.

- N.Y. PENAL LAW § 270.22: A person is guilty of the unlawful sale of body armor when they sell, exchange, give or dispose of body armor . . . to an individual whom they know or reasonably should have known is not engaged or employed in an eligible profession . . . . Unlawful sale of body armor is a class A misdemeanor for the first offense and a class E felony for any subsequent offense.

- N.Y. GEN. BUS. Law § 396-eee: 1. No person, firm or corporation shall sell or deliver body armor to any individual or entity not engaged or employed in an eligible profession. . . . 2. The provisions of subdivision one of this section regarding in person sale or delivery shall not apply to purchases made by federal, state, or local government agencies for the purpose of furnishing such body armor to employees in eligible professions. 3. For the purposes of this section, "body armor" shall have the same meaning as defined in . . . the penal law. 4. Any person, firm or corporation that violate the provisions of this section shall be guilty

4

of a violation punishable by a fine in an amount not to exceed five thousand dollars for the first offense and in an amount not to exceed ten thousand dollars for any subsequent offense.[3]

Plaintiffs maintain that the New York Statutes, and "Defendants' enforcement thereof," deprive them of their "fundamental, individual right to keep and bear defensive arms in common use." *Id.* ¶ 3. They claim that the Attorney General is empowered to "exercise[], delegate[], or supervise[] all the powers and duties of the New York Department of Law, which is responsible for enforcing New York's restrictions on the sale of body armor" imposed by the New York General Business Law. *Id.* ¶ 14. And Steven James, as Superintendent of the New York State Police, is "subject to the oversight and supervision of the Governor," and "exercises, delegates, or supervises all the powers and duties of the New York Division of State Police, including executing and enforcing New York's laws . . . [regarding] the criminalization of purchase and sale of body armor . . . ." *Id.* ¶ 15. Defendants Keane, Gabor, and Doorley, moreover, serve as the "prosecutorial officer[s] with the responsibility to conduct all prosecutions for crimes and offenses" in their respective counties. *Id.* ¶¶ 16-18 (citations omitted).

Plaintiffs assert claims under 42 U.S.C. § 1983 on the grounds that Defendants, through enforcement of the New York Statutes, "have deprived residents of New York—including the Individual Plaintiffs as well as other FPC members—of their individual rights" under the Second and Fourteenth

---

[3] N.Y. PENAL LAW §§ 270.21, 22 and N.Y. GEN. BUS. Law § 396-eee are collectively referred to as the "New York Statutes."

Amendments to the United States Constitution. *Id.* ¶¶ 55-63. Plaintiffs seek an injunction prohibiting Defendants from enforcing the challenged provisions. *See id.* at 21-22 (prayer for relief).[4] They also seek declaratory relief, as well as and attorneys' fees and costs. *See id.*

## II.    MOTIONS TO DISMISS

The Attorney General and Steven James (collectively, the "State") moved to dismiss the Amended Complaint in part. Dkt. 29. The State argues that all claims asserted by FPC should be dismissed for lack of standing. *See* Dkt. 29-1 at 4. They further argue that the Attorney General is "an improper party." *Id.* Keane also moved to dismiss. Dkt. 30.[5] Like the State, Keane argues that FPC lacks standing. *See* Dkt. 30-1 at 4. And Keane argues that he, too, is an improper party to this Action. *Id.* Plaintiffs opposed both motions. *See* Dkt. 36-41. The State replied. Dkt. 42.

---

[4] Page numbers refer to the CM/ECF stamped pages in the header of each page.

[5] The remaining Defendants—Doorley and Gabor—filed answers. Dkt. 31, 32.

## DISCUSSION

### I.   STANDARD OF REVIEW[6]

A case is properly dismissed under Rule 12(b)(1) when "the district court

lacks the statutory or constitutional power to adjudicate it." *Makarova v. United

States*, 201 F.3d 110, 113 (2d Cir. 2000). *See* Fed. R. Civ. P. 12(b)(1). To "survive a

motion to dismiss for lack of subject-matter jurisdiction based on standing pursuant

to Rule 12(b)(1), the plaintiff 'must allege facts that affirmatively and plausibly

suggest that it has standing to sue.'" *Justin v. Tingling*, 712 F. Supp. 3d 462, 467

(S.D.N.Y. 2024) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140,

145 (2d Cir. 2011)). In "considering such a motion, the Court must accept as true all

material facts alleged in the complaint and draw all reasonable inferences in the

plaintiff's favor." *Id.* (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).

### II.   ANALYSIS

#### A. Organizational Standing (FPC)

The State and Keane argue that FPC "lacks standing because it cannot bring

suit vicariously on behalf of [its] members, and because [it] cannot demonstrate any

---

[6] The State brings its motion under Fed. R. Civ. P. 12(b)(1). *See* Dkt. 29-1 at 4. Although Keane purports to bring his motion under Fed. R. Civ. P. 12(b)(6), *see* Dkt. 30 at 1, the motion, in substance, asserts standing arguments. *See generally* Dkt. 30-1. The Court, therefore, construes it as motion under Rule 12(b)(1). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88n.6 (2d Cir. 2006) ("[T]he proper procedural route [for standing challenges at the pleadings stage] is a motion under Rule 12(b)(1)").

injury in [its] own right." *See* Dkt. 29-1 at 7.[7] Plaintiffs respond that "FPC asserts

two claims against Defendants," namely, an "equitable claim" under the

"Supremacy Clause and *Ex parte Young*," and a "cause of action under Section

1983." *See* Dkt. 36 at 16.[8] Plaintiffs maintain that, to pursue "either claim," FPC

"needs to meet (and does meet) the three-part test for representational standing

articulated in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333,

343 (1977)." *Id.*

According to Defendants, Plaintiffs' standing arguments are "foreclosed by

binding Second Circuit precedent" and, even if "Plaintiffs' organizational standing

theory had merit, it would be procedurally improper because they never pled it in

their complaint." *See* Dkt. 42 at 5. Defendants further argue that "Plaintiffs' novel

assertion of a freestanding constitutional right of action outside of Section 1983 has

been decisively rejected by courts within the Second Circuit." *Id.* As discussed

below, the Court need not resolve the issue of organizational standing at this

juncture because the Individual Plaintiffs have standing.

    1.   <u>Legal Landscape</u>

The "fundamentals of standing are well-known and firmly rooted in American

constitutional law." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367,

---

[7] Keane adopted the State's arguments on the issue of organizational standing. *See* Dkt. 30-1 at 7. When referencing Defendants' arguments on this topic, this Decision and Order will cite only to the State's brief (Dkt. 29-1).

[8] Plaintiffs clarified that FPC "is not seeking redress for its own injuries in this lawsuit, but is seeking prospective relief solely on behalf of its members." *See* Dkt. 36 at 9 n.2.

380 (2024). By "limiting who can sue, the standing requirement implements 'the

Framers' concept of the proper—and properly limited—role of the courts in a

democratic society.'" *Id.* (quoting J. Roberts, Article III Limits on Statutory

Standing, 42 Duke L. J. 1219, 1220 (1993)). In general, to establish standing, "a

plaintiff must demonstrate (i) that [it] has suffered or likely will suffer an injury in

fact, (ii) that the injury likely was caused or will be caused by the defendant, and

(iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at

368 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

Where—like here—a "plaintiff is an organization, the standing requirements

of Article III can be satisfied in two ways." *Students for Fair Admissions, Inc. v.

President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). Specifically, "the

organization can claim that it suffered an injury in its own right or, alternatively, it

can assert 'standing solely as the representative of its members.'" *Id.* (quoting

*Warth v. Seldin*, 422 U.S. 490, 511 (1975)). The "latter approach is known as

representational or organizational standing." *Id.* And to "invoke it, an organization

must demonstrate that '(a) its members would otherwise have standing to sue in

their own right; (b) the interests it seeks to protect are germane to the

organization's purpose; and (c) neither the claim asserted nor the relief requested

requires the participation of individual members in the lawsuit.'" *Id.* (quoting

*Hunt*, 432 U.S. at 343).

9

The Second Circuit instructs, however, that "an organization does *not* have

standing to assert the rights of its members in a case brought under 42 U.S.C.

§ 1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (emphasis added).  The

Court explained that it has "interpreted the rights § 1983 secures to be personal to

those purportedly injured." *Id.* (quoting *League of Women Voters of Nassau Cnty. v.*

*Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir.1984) (internal

quotation marks and alterations omitted)).  These cases rely on *Aguayo v.*

*Richardson*, 473 F.2d 1090 (2d Cir. 1973), where the Court reasoned that, "Section

1983 confers a cause of action on any citizen of the United States or other person

within the jurisdiction thereof who has been deprived under color of state law of any

rights, privileges, or immunities secured by the Constitution and laws," and that

"[n]either this language nor the history" of the statute "suggests that an

organization may sue under the Civil Rights Act for the violation of rights of

members."  473 F.2d at 1099 (internal citation and quotation marks omitted).

In *Nnebe,* the Court observed that it has "reaffirmed the *Aguayo* rule in

*League of Women Voters* nine years after *Warth* and have not since reconsidered it."

644 F.3d at 156n.5.  Accordingly, the Court is "bound by the implicit determination

of prior [Circuit] panels that the rule survives *Warth* until such time as [its] prior

decisions are overruled either by *an en banc* panel of [that] Court or by the Supreme

Court." *Id.* (internal citation and alterations omitted).  *See also Connecticut*

*Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021) (concluding

that an organization lacked standing where, because it "brought this case under 42

U.S.C. § 1983, it lacked 'standing to assert the rights of its members'") (quoting

*Nnebe*, 644 F.3d at 156); *New York State Citizens' Coal. for Child. v. Velez*, 629 F.

App'x 92, 93 (2d Cir. 2015) ("When an organization brings suit under 42 U.S.C.

§ 1983 . . . this Circuit has held that it must do so on its own behalf, rather than

that of its members").

Nevertheless, there is some authority suggesting that, in the Second Circuit,

an organizational plaintiff *may* indeed assert the rights of its members under the

doctrine of representational standing in Section 1983 actions.  *See, e.g., Connecticut*

*Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) ("Organizations

like CTPU may have standing . . . by establishing so-called 'associational' or

'representational' standing to sue on behalf of its members . . . .").  *See also Irish*

*Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998); *New York C.L.*

*Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  And at

least one district court in this Circuit has concluded that that the "premises upon

which the *Aguayo* decision was based . . . are no longer viable" in light of *Warth* and

*Hunt.  Huertas v. E. River Hous. Corp.*, 81 F.R.D. 641, 651 (S.D.N.Y. 1979).[9]

In sum, Plaintiffs "may be right about *Aguayo*, and a time may come when

[the Second Circuit] rethink[s] organizational standing, or when the Supreme Court

---

[9] In addition, several other Circuit Courts of Appeal have applied the *Hunt* test for
representational standing in Section 1983 cases. *See, e.g., Nat'l Fed'n of Blind of
Mo. v. Cross*, 184 F.3d 973, 981 (8th Cir. 1999); *Retired Chi. Police Ass'n v. City of
Chicago*, 7 F.3d 584, 600–07 (7th Cir. 1993); *Contractors Ass'n of E. Pa., Inc. v. City
of Philadelphia*, 945 F.2d 1260, 1264–66 (3d Cir. 1991); *Maryland Highways
Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1251–53 (4th Cir. 1991).

does an intervention." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 124 (2d Cir. 2017) (Jacobs, J., dissenting). And this Court is also mindful that, in the event that Supreme Court precedent is merely "in tension" with Second Circuit precedent, district courts must follow the Circuit's precedent "unless and until that case is reconsidered by [the Circuit Court] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision." *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003). The issue is very murky and need not be decided here.

2. The Court Need Not Address Organizational Standing

There is no dispute that the Individual Plaintiffs *do* have standing. The Court, therefore, need not—and does not—resolve the organizational standing issue at this juncture. *See Kwong v. Bloomberg*, 723 F.3d 160, 162n.4 (2d Cir. 2013) ("Because we are persuaded that the individual plaintiffs have standing, we need not address the standing arguments, left unresolved by the District Court, regarding the two organizational plaintiffs") (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977)). The motions are denied on this point.

**B. The Attorney General and Keane**

The State also argues that the Attorney General is an improper party because Plaintiffs fail to satisfy the elements of standing as to claims against her. *See* Dkt. 29-1 at 5-7. According to the State, even "assuming Plaintiffs could establish injury-in-fact, Plaintiffs still fail to link their alleged injuries to any

conduct by Attorney General James as they are not traceable or redressable by her."
*Id.* at 5.  Keane likewise argues that, even "assuming plaintiffs could establish
injury-in-fact, plaintiffs still fail to link their alleged injuries to any conduct" by
Keane.  *See* Dkt. 30-1 at 5.  The State further argues that "Eleventh Amendment
immunity precludes suit" against Attorney General.  *See* Dkt. 29-1 at 6.

Plaintiffs respond that the Attorney General is "responsible for enforcing"
N.Y. Gen. Bus. Law § 396-eee, and "there can be little doubt" as to her willingness
to do so, given her "enthusiastic praise" of the restrictions.  Dkt. 36 at 31-32.  And
"there will still be no willing, lawful sellers if [the Attorney General] continues to
enforce GBL § 396-eee, which the law of standing presumes she will do."  *Id.* at 32.
As to Keane, Plaintiffs maintain that, because the New York Statues are "not
moribund," and because Keane "has not disavowed enforcement," it is "presumed
that he will enforce" the statutes.  *Id.* at 33.  Plaintiffs further argue that their
claims against the Attorney General "fit squarely within the *Ex Parte Young*
exception to Eleventh Amendment immunity."  *Id.* at 32.  For the reasons below, the
motions to dismiss claims against the Attorney General and Keane are denied.

1. Standing

As noted above, to establish standing, "a plaintiff must demonstrate (i) that
[it] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was
caused or will be caused by the defendant, and (iii) that the injury likely would be

redressed by the requested judicial relief." *Food & Drug Admin.*, 602 U.S. at 368 (internal citations omitted).[10]

An injury in fact exists where a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 555). In the context of a pre-enforcement challenge—as in this case—a plaintiff must demonstrate "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) that the intended conduct is proscribed by the challenged law; and (3) that there exists a credible threat of prosecution thereunder." *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)).[11]

The identification of a "credible threat" necessarily "depends on the particular circumstances at issue. . . ." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (citing *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)). But a plaintiff need not first "expose [itself] to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be

---

[10] It is unclear whether Defendants challenge the injury-in-fact element. For completeness, the Court addresses all elements of standing as to claims against the Attorney General and Keane. They are satisfied.

[11] While "many pre-enforcement cases involve a threat of criminal prosecution, the 'fear of civil penalties' can likewise be sufficient." *Nastri v. Dykes,* No. 23-1023, 2024 WL 1338778, at *1 (2d Cir. Mar. 29, 2024) (quoting *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000)).

enforced." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)).

Moreover, it is "well-established" that, where "'a statute specifically

proscribes conduct, the law of standing does not place the burden on the plaintiff to

show an intent by the government to enforce the law against it.'" *Vitagliano*, 71

F.4th at 138 (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d

Cir. 2019)). Rather, the Court "presume[s] such intent in the absence of a disavowal

by the government or another reason to conclude that no such intent existed." *Id.*

(internal citation omitted). Indeed, the "credible-threat standard 'sets a low

threshold and is quite forgiving to plaintiffs seeking such pre[-]enforcement review,

as courts are generally willing to presume that the government will enforce the law

as long as the relevant statute is recent and not moribund.'" *Id.* (quoting *Cayuga

Nation*, 824 F.3d at 331).

Here, Plaintiffs have demonstrated injury-in-fact. They allege "an intention

to engage in a course of conduct" arguably protected by the Second Amendment but

proscribed by New York law. *See id.* at 136. Specifically, Heeter, Braiman, and

Wurtenberg "intend[] to exercise [their] right to keep and bear body armor for

lawful purposes." Dkt. 19 ¶¶ 48, 50, 52. And because of challenged restrictions,

they are "unable to purchase body armor in New York." *Id.* ¶ 54.

Plaintiffs also allege a "credible threat" of future enforcement. Specifically,

they allege that the Attorney General is "is responsible for enforcing New York's

restrictions on the sale of body armor imposed by" Section 396-eee of the General

Business Law. *Id.* ¶ 14. Plaintiffs also point to the Attorney General's statements following enactment of the restrictions, which suggest that she intends to enforce the law.[12] *See, e.g.*, Dkt. 37-1 at 4 ("Today, New York is taking swift, comprehensive action to combat the gun violence epidemic . . . . With this new package of gun laws, New York will continue to lead in imposing reasonable gun laws that keep our people safe, and I urge other states to follow suit. The time for thoughts and prayers alone has long passed — now is the time for action"); Dkt. 37-2 at 2 ("Make no mistake: This decision will not deter us from standing up to the gun lobby . . . . I vow to use the full force of my office to protect New Yorkers and American families").

Plaintiffs further allege that Keane, as the Erie County District Attorney, is "the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which he serves." Dkt. 19 ¶ 16. In Erie County, therefore, Keane is responsible for enforcing the challenged provisions of the New York Penal Law. *See Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005) ("The District Attorney . . . ha[s] the duty to prosecute offenses within that County") (citing N.Y. County Law § 700(1)).

In sum, because the challenged restrictions are "recent and not moribund," and because neither the Attorney General nor Keane disavows enforcement, the

---

[12] In deciding a Rule 12(b)(1) motion, the Court may "rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015).

Court presumes that these Defendants will enforce the law. *See Vitagliano*, 71 F.4th at 138 (internal citation omitted).

Plaintiffs also satisfy "the causation and redressability requirements." *Id.* at 140. Their injuries are "fairly traceable to the challenged [restrictions] and can be redressed by [their] requested relief," *i.e.,* a declaration that provisions are unconstitutional and an injunction enjoining their enforcement. *Id.* Indeed, Plaintiffs claims that, because the challenged restrictions "eliminate[] the market for body armor," Dkt. 19 ¶ 23, there are "there are no willing, lawful sellers of body armor." Dkt. 36 at 32. Plaintiffs, therefore, cannot obtain the full relief they seek absent an injunction.

### 2. Eleventh Amendment

The "Eleventh Amendment generally prohibits lawsuits against a state without that state's consent." *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 58 (N.D.N.Y. 2022), aff'd, 88 F.4th 186 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). This "prohibition extends to individuals sued for damages in their capacities as state officials." *Id.* (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002)).

Under *Ex parte Young*, however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). *See Ex parte Young*, 209 U.S. 123 (1908).

For this "exception to apply, 'the state officer against whom a suit is brought must have some connection with the enforcement of the act that is in continued violation of federal law.'" *Gazzola*, 645 F. Supp. 3d at 58 (quoting *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005)). That includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are needed." *Kelly v. New York State Civ. Serv. Comm'n*, No. 14 CV 716 VB, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015), aff'd sub nom. *Kelly v. New York Civ. Serv. Comm'n*, 632 F. App'x 17 (2d Cir. 2016).

Here, Plaintiffs seek prospective injunctive relief. *See* Dkt. 19 at 21-22. And the Attorney General has a sufficient connection with the enforcement of N.Y. Gen. Bus. Law § 396-eee because she is "is responsible for enforcing" the challenged provision of the General Business Law. *See id.* ¶ 14. Various statements reinforce her willingness to exercise that duty. *See, e.g.*, Dkt. 37-1 at 4; Dkt. 37-2 at 2. On this record, the Eleventh Amendment is no bar to Plaintiffs' claims against the Attorney General.

## CONCLUSION

For the reasons above, Defendants' motions to dismiss (Dkt. 29, 30) are

DENIED.


SO ORDERED.


Dated:        November 8, 2024
              Buffalo, New York

                                        _____
                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE

19