UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BENJAMIN HEETER, et al.

                      Plaintiffs,

          v.

LETITIA JAMES, et al.

                     Defendants.

_____

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF <u>SUMMARY JUDGMENT</u>**

Civil Action No.:

1:24-cv-00623-JLS

 

Plaintiffs, by and through counsel of record, file this Statement of Undisputed Material Facts in support of their motion for summary judgment, in accordance with Local R. Civ. P. 56(a)(1):

**A.     New York passes the Body Armor Ban; AG James claimed to have participated in passing the Ban, and enthusiastically applauded its enactment.**

1.     In the summer of 2022, New York State enacted a raft of new firearms restrictions, ostensibly in response first to mass shootings in Buffalo, New York and Uvalde, Texas, and a few weeks later, to the U.S. Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022).

2.     Governor Hochul signed the first such "landmark legislative package" on June 6, 2022, at a signing ceremony with Defendant New York State Attorney General Letitia James ("AG James"). Pl.'s App'x **Exhibit A** is Governor Hochul's June 6, 2022 press release, "Governor Hochul Signs Landmark Legislative Package to Strengthen Gun Laws and Protect New Yorkers. Also available at:

https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislative-package-strengthen-gun-laws-and-protect-new-yorkers.

3.      This "comprehensive bill package" "ban[ned] body armor sales outside of people in select professions." *Id.*

4.      AG James enthusiastically commended the legislation, proclaiming: "[w]ith this new package of gun laws, New York will continue to lead in imposing reasonable gun laws that keep our people safe, and I urge other states to follow suit." *Id.*

5.      Approximately two weeks later, on June 23, 2022, the Supreme Court issued its decision in *Bruen*, which struck down the "proper cause" requirement of New York State's concealed carry permitting scheme, because that "special need" scheme prevented citizens with ordinary self-defense needs from exercising their constitutionally protected right to keep and bear arms, and clarified that means-ends tiered scrutiny analysis has no place in Second Amendment challenges.

6.      In response, AG James vowed:

> In the days to come, **my office will be taking action** to address the potential harm that this ruling may cause, and we will continue to defend the constitutionality of our state's laws, as we've always done. **We will work with the Governor and Legislature** to amend our licensing statute that will continue to protect New Yorkers. I want to reassure all New Yorkers that our robust gun protection laws remain intact and **we will be working with our partners in government to further strengthen them**.

Pl.'s App'x **Exhibit B** is New York State Attorney General Letitia James' ("AG James") June 23, 2022 press release, "Attorney General James Vows to Protect New Yorkers in Wake of Supreme Court Ruling" (emphasis added). Also available at:

https://ag.ny.gov/press-release/2022/attorney-general-james-vows-protect-new-yorkers-wake-supreme-court-ruling.

7.      Over the course of the following week, Governor Hochul called lawmakers back to Albany for a special session, and on July 1, 2022, passed the second of that summer's "landmark" packages of gun restrictions, known as the Concealed Carry Improvement Act ("CCIA").

8.      The CCIA amended the Body Armor Ban as enacted a few weeks earlier, to greatly expand the definition of "body armor" from soft body-vests to "any product that is a personal protective body covering intended to protect against gunfire, regardless of whether such product is to be worn alone or is sold as a complement to another product or garment."  Penal Law § 270.20.

9.      In the words of AG James, the CCIA "expand[ed] the scope of bullet-resistant protective equipment prohibited in New York [to encompass], for example, the steel-plated vest worn by the shooter in the [sic] Buffalo, New York."  Pl.'s App'x **Exhibit C** is AG James' January 26, 2023 press release, "Understanding Recent Changes to New York's Gun Laws." (emphasis added).  Also available at: https://ag.ny.gov/new-york-gun-laws.

10.     AG James applauded the amended Body Armor Ban.  Pl.'s App'x **Exhibit D** is AG James' July 2, 2022 press release, "Attorney General James' Statement on New Efforts to Protect Abortion and Strengthen Gun Control."  Also available at: https://ag.ny.gov/press-release/2022/attorney-general-james-statement-new-efforts-protect-abortion-and-strengthen-gun.

B.      **The Body Armor Ban is a recent law**
        **that is regularly enforced by Defendants.**

11.     Defendant AG James and Governor Hochul enthusiastically touted New York State's first-in-the-nation (and only) Body Armor Ban as a key part of their 2022

"landmark legislation" restricting firearms.  Pl.'s App'x **Exhibit E** is Governor Hochul's

June 1, 2022 press release, "Governor Hochul Signs Landmark Legislation to Strengthen

Gun Laws and Bolster Restrictions on Concealed Carry Weapons in Response to Reckless

Supreme Court Decision."  Also available at:

https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislation-
strengthen-gun-laws-and-bolster-restrictions.

12.     Neither have distanced themselves from the law, nor treated it as

obsolete.  A State website links AG James to enforcement of the "marketplace prohibition"

in GBL § 396-eee.  Pl.'s App'x **Exhibit F** is a screenshot of the New York Secretary of

State's website "FAQ's" concerning the Body Armor Ban (*see* Q2).  Also available at:

https://dos.ny.gov/body armor#:~:text=Effective%20July%206%2C%202022%2C%20whe
n,of%20body%20armor%20is%20prohibited.

13.     The State Police warned shortly after enactment that they have "zero

tolerance" for violations of the CCIA, which encompasses the Body Armor Ban.  If "you

violate this law, you will be arrested.  Simple as that."  The State Police's warnings

regarding zero tolerance for violations of the CCIA are available on Youtube:  "Governor

Hochul Delivers a Press Conference on Gun Violence Prevention," August 31, 2022,

beginning at 37:40. https://www.youtube.com/watch?v=gC1L2rrztQs.

14.     The Ban has been consistently enforced by the State Police, including

multiple arrests after enactment.  Pl.'s App'x **Exhibits G, H, and I** are State Police press

releases discussing arrests for violation of the Body Armor Ban.  Also available at:

https://troopers.ny.gov/news/state-police-arrest-virginia-man-illegally-possessing-multiple-
firearms (Ex. G, August 2024); https://troopers.ny.gov/news/new-york-state-police-arrest-

hastings-man-illegally-possessed-firearms (Ex. H, August 2024);

https://troopers.ny.gov/news/niagara-falls-man-arrested-multiple-ghost-guns (Ex. I, June 2024).

15.     The new crimes of selling and purchasing body armor are included in the state's pattern jury instructions.  Pl.'s App'x **Exhibit J** contains the pattern jury instructions for Penal Law § 270.21 (unlawful possession of body armor).  Also available at: https://nycourts.gov/judges/cji/2-PenalLaw/270/270.21.pdf.  Pl.'s App'x **Exhibit K** contains the pattern jury instructions for Penal Law § 270.22 (unlawful sale of body armor). Also available at: https://nycourts.gov/judges/cji/2-PenalLaw/270/270.22.pdf.

**C.     FPC's New York members have been and continue to be injured by the Body Armor Ban.**

16.     FPC is a 501(c)(4) nonprofit membership organization with members residing in New York State, including Plaintiffs Heeter and Wurtenberg.  FPC's members throughout the state, who have plans to purchase and/or acquire body armor for lawful purposes, but who are not in a profession deemed "eligible" by the state, have been prohibited from doing so since July 6, 2022, when the amended Body Armor Ban took effect.  These FPC members are and will continue to be injured by the Body Armor Ban unless and until enforcement is enjoined.  The individual Plaintiffs in this case are but two examples of FPC's members who have a continuing desire to purchase and/or acquire body armor and are injured by the Ban.  Pl.'s App'x **Exhibit L** is the Declaration of Brandon Combs, dated September 27, 2024.

17.     Plaintiff Heeter is a resident of Erie County, and wishes to purchase body armor for lawful purposes, including to protect himself in the event of civil unrest similar to the riots of 2020.  He is a medical device salesman, which is not an eligible

profession.  Pl.'s App'x **Exhibit M** is the Declaration of Benjamin Heeter, dated September 27, 2024.

18.    Plaintiff Wurtenberg is a resident of Monroe County, and wishes to purchase body armor for lawful purposes, including to have it available for his "graveyard shift" commute during late night hours in downtown Rochester, and to incorporate into his range training equipment to prevent accidental injury.  Plaintiff Wurtenberg is a 911 dispatcher, which is not an eligible profession.  Pl.'s App'x **Exhibit N** is the Declaration of Joseph Wurtenberg, dated September 27, 2024.

**D.    Body armor is in common use for lawful purposes.**

19.    Body armor is legal in all states other than New York, creating a robust market for civilian body armor.  There are at least 70 manufacturers that sell body armor to the civilian marketplace, demonstrating strong consumer demand.  Pl.'s App'x **Exhibit O** is a list of such manufacturers.

20.    A recent analysis of the body armor market by Precedence Research ("Precedence") concluded that American civilians spent $41.9 million on body armor in 2022.  Declaration of Nicolas Rotsko, dated March 27, 2026 ("Rotsko Decl.), **Exhibit 3**, at U.S. Body Armor Market tab.   Precedence projected that U.S. civilian expenditures on body armor would increase to $69.2 million by 2034, as the materials to make body armor become more and more lightweight, thereby increasing its popularity.  *Id.*

21.    Grand View Research ("Grand View") analyzed the North American body armor market using a detailed research methodology and data from 2021-2025.  Rotsko Decl. **Exhibit 1**.  Grand View estimated that civilians spent $61.9 million on body armor in 2023, $65.7 million in 2024, and $69.8 million in 2025.  *Id.* (see data table after

methodology).  Grand View projected that civilian expenditures on body armor would increase to $111.5 million by 2033.  *Id.*

22.    Multiple additional market research firms consider civilian use to be a driver of industry growth.  Fortune Business Insights identified the civilian market as a growth opportunity, because new "[m]odular body armor systems offer flexibility and versatility, . . . [and] are becoming increasingly popular among civilians seeking personal safety."  Rotsko Decl. **Exhibit 5**.  According to Fortune Business Insights, North America held the largest share of the global body armor market in 2024, in part because of "increasing civilian demand for personal protective gear amid rising security threats."

23.    Cognitive Market Research observed "[r]ising crime rates and growing concerns about personal safety have driven increased demand for body armor among civilians, particularly in high-risk areas."  Rotsko Decl. **Exhibit 6**.  Discussing the mass shooting in Buffalo, New York in May 2022, and the Pittsburgh synagogue shooting in 2018, Cognitive Market Research observed that "[t]hese events, along with numerous civil protests and violent confrontations, have underscored the critical need for body armor for both law enforcement and civilians."  *Id.*  Cognitive Market Research observed that "the Covert segment dominates the market.  Covert body armor is designed to be worn under clothing, providing discreet protection without drawing attention. This feature makes it particularly appealing for civilians, including high-net-worth individuals, executives, and security personnel, who require personal safety but do not want to reveal that they are wearing protective gear."  *Id.*

24.    This Court should grant judgment in Plaintiffs favor, declare the Body Armor Ban unconstitutional, and enjoin its enforcement.

- 8 -

Dated: March 27, 2026

/s/ Nicolas J. Rotsko
Nicolas J. Rotsko, Esq.