UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BENJAMIN HEETER, et. al.

               Plaintiffs,

vs.

LETITIA JAMES, et. al.

               Defendants.

---

**DEFENDANT MICHAEL J. KEANE'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

**Civil Action No.: 1:24-cv-00623-JLS**

Defendant, MICHAEL J. KEANE, by and through his attorneys, JEREMY C. TOTH, Erie County Attorney, Christopher J. Sasiadek, Assistant County Attorney, of Counsel, files this response to the plaintiffs' Statement of Undisputed Material Facts in accordance with Local Rule of Civil Procedure 56.

**PRELIMINARY STATEMENT**

Most statements contained in the plaintiffs' statement of undisputed material facts concern actions or statements made by individuals and/or entities other than Defendant Michael J. Keane. Therefore, Defendant Keane lacks personal knowledge to admit to or object to most of plaintiffs' statements of fact. To the extent that Defendant Keane is unable to admit to any statement of fact for lack of knowledge, Defendant Keane objects to such statement of fact and asserts that it is the plaintiffs' burden to support any alleged facts with sufficient evidence in admissible form.

## RESPONSES

1.      In the summer of 2022, New York State enacted a raft of new firearms restrictions, ostensibly in response first to mass shootings in Buffalo, New York and Uvalde, Texas, and a few weeks later, to the U.S. Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022).

**RESPONSE:** Admits that New York State enacted firearms regulations in 2022, without knowledge sufficient to admit to the motivations for such enactment.

2.      Governor Hochul signed the first such "landmark legislative package" on June 6, 2022, at a signing ceremony with Defendant New York State Attorney General Letitia James ("AG James").

**RESPONSE:** Defendant Keane does not object to this statement.

3.      This "comprehensive bill package" "ban[ned] body armor sales outside of people in select professions."

**RESPONSE:** Defendant Keane does not object to this statement.

4.      AG James enthusiastically commended the legislation, proclaiming "[w]ith this new package of gun laws, New York will continue to lead in imposing reasonable gun laws that keep our people safe, and I urge other states to follow suit."

**RESPONSE:** Defendant Keane is without knowledge sufficient to admit to object to this statement.

5.      Approximately two weeks later, on June 23, 2022, the Supreme Court issued its decision in *Bruen*, which struck down the "proper cause" requirement of New York State's concealed carry permitting scheme, because that "special need" scheme prevented citizens with ordinary self-defense needs from exercising their constitutionally protected right to keep and bear arms, and clarified that means-ends tiered scrutiny analysis has no place in Second Amendment challenges.

**RESPONSE:** This statement is a statement of law, inappropriate to a statement of undisputed facts. To the degree that a response is require, Defendant Kean objects to the characterizations made in this statement.

6.   In response, AG James vowed:

> In the days to come, my office will be taking action to address the potential harm that this ruling may cause, and we will continue to defend the constitutionality of our state's laws, as we've always done. We will work with the Governor and Legislature to amend our licensing statute that will continue to protect New Yorkers. I want to reassure all New Yorkers that our robust gun protection laws remain intact and we will be working with our partners in government to further strengthen them.

**RESPONSE:** This statement is directed at another party, and Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

7.    Over the course of the following week, Governor Hochul called lawmakers back to Albany for a special session, and on July 1, 2022, passed the second of that summer's "landmark" packages of gun restrictions, known as the Concealed Carry Improvement Act ("CCIA").

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

8.    The CCIA amended the Body Armor Ban as enacted a few weeks earlier, to greatly expand the definition of "body armor" from soft body-vests to "any product that is a personal protective body covering intended to protect against gunfire, regardless of whether such product is to be worn alone or is sold as a complement to another product or garment." Penal Law § 270.20.

**RESPONSE:** Defendant Keane admits that the above statement correctly quotes Penal Law § 270.20.

9.    In the words of AG James, the CCIA "expand[ed] the scope of bullet resistant protective equipment prohibited in New York [to encompass], for example, the steel-plated vest worn by the shooter in the [sic] Buffalo, New York."

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

10.    AG James applauded the amended Body Armor Ban.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

11.    Defendant AG James and Governor Hochul enthusiastically touted New York State's first-in-the-nation (and only) Body Armor Ban as a key part of their 2022 "landmark legislation" restricting firearms.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

12.     Neither have distanced themselves from the law, nor treated it as obsolete. A State website links AG James to enforcement of the "marketplace prohibition" in GBL § 396-eee.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

13.     The State Police warned shortly after enactment that they have "zero tolerance" for violations of the CCIA, which encompasses the Body Armor Ban. If "you violate this law, you will be arrested. Simple as that."

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

14.     The Ban has been consistently enforced by the State Police, including multiple arrest after enactment

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

15.     The new crimes of selling and purchasing body armor are included in the state's pattern jury instructions.

**RESPONSE:** Defendant Keane admits to the statement.

16.     FPC is a 501(c)(4) nonprofit membership organization with members residing in New York State, including Plaintiffs Heeter and Wurtenberg. FPC's members throughout the state, who have plans to purchase and/or acquire body armor for lawful purposes, but who are not in a profession deemed "eligible" by the state, have been prohibited from doing so since July 6, 2022, when the amended Body Armor Ban took effect. These FPC members are and will continue to be injured by the Body Armor Ban unless and until enforcement is enjoined. The individual Plaintiffs in this case are but two examples of FPC's members who have a continuing desire to purchase and/or acquire body armor and are injured by the Ban.

**RESPONSE:** Defendant Keane objects to the allegation that FPC members are injured by the Body Armor Ban. Defendant Keane lacks knowledge sufficient to admit to or object to the remainder of the statement.

17.     Plaintiff Heeter is a resident of Erie County, and wishes to purchase body armor for lawful purposes, including to protect himself in the event of civil unrest similar to the riots of 2020. He is a medical device salesman, which is not an eligible profession.

**RESPONSE:** Defendant Keane does not object to the statement of Plaintiff Heeter's residency or profession. Defendant Keane lacks knowledge sufficient to admit to or object to Plaintiff Heeter's motivations.

18.     Plaintiff Wurtenberg is a resident of Monroe County, and wishes to purchase body armor for lawful purposes, including to have it available for his "graveyard shift" commute during late night hours in downtown Rochester, and to incorporate into his range training equipment to prevent accidental injury.

**RESPONSE:** Defendant Keane does not object to the statement of Plaintiff Wurtenberg's residency or profession. Defendant Keane lacks knowledge sufficient to admit to or object to Plaintiff Wurtenberg's motivations.

19.     Body armor is legal in all states other than New York, creating a robust market for civilian body armor. There are at least 70 manufacturers that sell body armor to the civilian marketplace, demonstrating strong consumer demand.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

20.     A recent analysis of the body armor market by Precedence Research ("Precedence") concluded that American civilians spent $41.9 million on body armor in 2022. Precedence projected that U.S. civilian expenditures on body armor would increase to $69.2 million by 2034, as the materials to make body armor become more and more lightweight, thereby increasing its popularity.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

21.     Grand View Research ("Grand View") analyzed the North American body armor market using a detailed research methodology and data from 2021-2025. Grand View estimated that civilians spent $61.9 million on body armor in 2023, $65.7 million in 2024, and $69.8 million in 2025. Grand View projected that civilian expenditures on body armor would increase to $111.5 million by 2033.

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

22.     Multiple additional market research firms consider civilian use to be a driver of industry growth. Fortune Business Insights identified the civilian market as a growth opportunity, because new "[m]odular body armor systems offer flexibility and versatility, . . . [and] are becoming increasingly popular among civilians seeking personal safety." According to Fortune Business Insights, North America held the largest share of the global body armor market in 2024, in part because of "increasing civilian demand for personal protective gear amid rising security threats."

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

23.     Cognitive Market Research observed "[r]ising crime rates and growing concerns about personal safety have driven increased demand for body armor among civilians, particularly in high-risk areas." Discussing the mass shooting in Buffalo, New York in May 2022, and the

Pittsburgh synagogue shooting in 2018, Cognitive Market Research observed that "[t]hese events, along with numerous civil protests and violent confrontations, have underscored the critical need for body armor for both law enforcement and civilians." *Id.* Cognitive Market Research observed that "the Covert segment dominates the market. Covert body armor is designed to be worn under clothing, providing discreet protection without drawing attention. This feature makes it particularly appealing for civilians, including high-net-worth individuals, executives, and security personnel, who require personal safety but do not want to reveal that they are wearing protective gear."

**RESPONSE:** Defendant Keane lacks knowledge sufficient to admit to or object to the statement.

24.    This Court should grant judgment in Plaintiffs favor, declare the Body Armor Ban unconstitutional, and enjoin its enforcement.

**RESPONSE:** This statement does not allege any fact. To the extent necessary, Defendant Keane objects to this statement.

DATED:    Buffalo, New York
April 27, 2026April 27, 2026

Yours truly,

JEREMY C. TOTH
Erie County Attorney
Attorney for Defendants,

By: _____
Christopher J. Sasiadek
Assistant County Attorney, of Counsel
95 Franklin Street, Room 1634
Buffalo, New York 14202
(716) 858-2200