UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BENJAMIN HEETER, *et al.*,

<em>Plaintiffs</em>,

   v.

LETITIA JAMES, *et al.*,

<em>Defendants.</em>

---

Civil Action No.:

1:24-cv-00623-JLS

 

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO *AMICUS CURIAE*
BRADY CENTER TO PREVENT GUN VIOLENCE, GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE, AND EVERYTOWN FOR GUN SAFETY'S
<u>BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>**

 

Respectfully Submitted,

FLUET

*Attorney for Plaintiffs*
1751 Pinnacle Drive
Suite 1000
Tysons, VA 22102
T:  (703) 590-1234
F:  (703) 590-0366
nrotsko@fluet.law

Nicolas J. Rotsko, Esq.

The individual right to self-defense is the "central component" of the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). Americans' right to purchase, possess, and use arms for self-defense, including purely defensive arms, is explicitly protected against government infringement. New York's ban on ordinary, law-abiding citizens purchasing purely defensive arms is unconstitutional.

*Amici curiae* Brady Center, Giffords Law Center, and Everytown ("*Amici*") offer nothing to overcome these fundamental truths. Even before the United States Supreme Court's recent decision in *Wolford v. Lopez*, 609 U.S. ---, 2026 WL 1825723 (June 25, 2026), *Amici* were fundamentally wrongheaded in their application of *Heller* and *Bruen*. *Wolford* squarely rejected *Amici*'s approach, just as this Court should.

## I.    The "plain text" threshold inquiry does not involve empirical questions about common use.

*Wolford* left no doubt that in Second Amendment cases, the Plaintiffs' burden is merely to meet a threshold inquiry of whether the restricted conduct falls within the "plain text" of the Amendment. *Wolford*, at \*6. Nevertheless, *Amici* would have this Court expand this "plain text" threshold inquiry to encompass an empirical question of whether body armor "is in common use" by law-abiding citizens, *Amici* Br. (Dkt. No. 117), at 3-4, improperly attempting to shift this burden onto Plaintiffs. *See also id.* at 6 (improperly asserting that "Plaintiffs bear the burden of demonstrating that body armor is in common use by law-abiding citizens for lawful self-defense purposes.").

*Wolford* is emphatic, however, that these "common use" considerations "are out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's 'plain text." *Wolford*, at \*10. *Amici* ask this Court to "smuggle additional limits, drawn from our regulatory tradition into the

1

plain-text stage of the inquiry," but "[t]he answer *is and always has been no*." *Id.* at *14 n.1 (Barret, J., concurring) (emphasis added).  Indeed, as Justice Jackson explained in her dissent, applying *Bruen* requires that "at step one, courts must look *only* to the 'plain text' of the Second Amendment." *Id.* at *26 (Jackson, J., dissenting) (emphasis in original).

## II.    Armor is an arm.

*Amici* completely ignore that the Supreme Court already defined "Arms" to encompass armor.  In *Heller*, the Court held that the plain text of "Arms" encompasses not just weapons, but also "armour of defence" and "any thing that a man wears for his defence."  554 U.S. at 581.  *Heller* also cited Webster's 1828 Dictionary, which gave as its first definition of arms "weapons of offense, or armor for defense and protection of the body." *American Dictionary of the English Language* (1828).  The plain meaning of "Arms" as held and so defined by the Supreme Court encompasses defensive body armor.  Yet *Amici* breeze past this as if the Court misspoke or was confused when propounding its definition.  *Amici*'s mistake is further laid bare in *Wolford*, which affirmatively reiterates " 'Arms,' we have explained, refers to *implements* used for offense *or defense*." *Wolford*, at *4 (emphasis added).

It is unremarkable that in other places, *Heller* (and *Wolford*) interchanged "arms" with "weapons", since those cases concerned weapons.  What is more persuasive—and binding— is that *Heller* expressly encompassed armor within the meaning of "Arms." *Heller*, 554 U.S. at 581; *see also Lane v. Cacace*, No. 22-CV-10989 (KMK), 2025 WL 903766, at *6 (S.D.N.Y. Mar. 25, 2025) ("In *Heller*, the Supreme Court defined arms by referring to the term's 18th century meaning—'weapons of offence, or armour of defence,' or 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"); *Nat'l Assoc. for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 79 (D. Conn. 2023) ("When interpreting"

2

the term "arms," the *Heller* Court "relied on dictionaries from the Founding era defining [them] as 'weapons of offence, or armour of defence,' or as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another'" (cleaned up)).  Contrary to *Amici*'s preferences, armor is an arm.

### III.    Body armor protects law abiding citizens from criminal violence.

Unable to identify relevant historical analogues that could situate the Body Armor Ban in the well-established mainstream tradition of American arms regulation, *Amici* instead argue that the Ban should be saved because mass shooters and other criminals can also use body armor when committing violent crimes (which was already a felony in New York before the State banned ordinary law-abiding citizens from possessing or acquiring armor).  First, as demonstrated above, that is not how courts examine Second Amendment challenges.  Second, *Amici* ignore *Heller*'s explicit rejection of "judge-empowering 'interest-balancing inquir[ies]'" that would weigh criminal misuse of arms against the rights of law-abiding citizens.  554 U.S. at 534.  The Supreme Court has repeatedly rejected *Amici*'s proposed interest-balancing approach.  *Bruen*, 597 U.S. at 22-23; *see also United States v. Hemani*, 608 U.S. --- (June 18, 2026), 146 S.Ct. 1677, 1698 (Jackson, J., concurring) (noting the Court's explicit rejection of means-end scrutiny).

In culmination, *Amici* improperly attempt to balance away the constitutionally protected right of law-abiding individuals to possess purely defensive arms.  Perhaps most poignantly, *Amici* ignore the constitutionally protected right of parents (and other law-abiding citizens) to buy, for example, Kevlar plates for a child's backpack to protect their loved one from the very same mass shooter risk *Amici* emphasize—just like parents all around the country outside of New York have done.  *E.g.*, Dkt. No. 71, at 18 (uptick in sales of bulletproof

3

backpacks after school shootings).  Tragic mass shooting events cannot be a justification for depriving law-abiding citizens of the means to protect themselves and their loved ones from the criminals perpetrating such tragedies.

**IV.    Body armor is not "unusually dangerous" but is purely defensive.**

Finally, *Amici* illogically contend that body armor is "unusually dangerous," even though it purely defensive.  *Amici* Br., at 17-18.  *Amici* concede that what the Second Circuit means by "unusually dangerous" is a "novel weapon[] . . . particularly suited for criminal violence."  *NAGR*, 153 F.4th at 242; *see also id.* at 223 ("uniquely designed to create mayhem.").  Yet even under that incredibly expansive test, armor is the least dangerous of the arms protected by the Second Amendment, because its only function is to protect the wearer.  Airline passengers are even permitted to bring it onboard flights in carry-on luggage.  Dkt. No. 71, at 22-24.  Body armor protects ordinary law-abiding citizens from criminal violence, just as it protects law enforcement.  For the reasons already advanced by Plaintiffs in briefing, body armor is not "unusually dangerous."

**CONCLUSION**

Ordinary law-abiding citizens have a constitutionally protected right to purchase, possess, and use body armor, despite *Amici*'s efforts to contend otherwise.  The Court should grant judgment in Plaintiffs' favor, deny Defendants' motions, declare the Body Armor Ban unconstitutional, and enjoin its enforcement.

4

Respectfully Submitted,                     FLUET

Dated:   McLean, Virginia                   By: /s/ Nicolas J. Rotsko
         July 10, 2026                             Nicolas J. Rotsko, Esq.

                                            1751 Pinnacle Drive
                                            Suite 1000
                                            Tysons, VA 22102
                                            T: (703) 590-1234
                                            F: (703) 590-0366
                                            nrotsko@fluet.law
                                            *Attorney for Plaintiffs*

5