UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENJAMIN HEETER, *et al.*,

                                        *Plaintiffs*,

            v.

LETITIA JAMES, *et al.*,

                                        *Defendants.*

Civil Action No.:

1:24-cv-00623-JLS-HKS

**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Respectfully Submitted,

FLUET

*Attorney for Plaintiffs*
1751 Pinnacle Drive
Suite 1000
Tysons, VA 22102
T:  (703) 590-1234
F:  (703) 590-0366
nrotsko@fluet.law

Nicolas J. Rotsko, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................................................................ii

I.    The "plain text" threshold inquiry does not involve
      questions about common use....................................................................... 1

II.   Armor is an arm........................................................................................... 2

III.  *Wolford* and *Hemani* confirmed Plaintiffs' articulation
      of *Bruen*'s historical analysis—*i.e.*, "step two" of the *Bruen*
      test—and confirmed that the State's historical analogues
      must meet the "how and why" standard, which they do not. ........................ 3

IV.   *Hemani* confirmed the Court's rejection
      of the State's interest balancing. ................................................................. 4

V.    CONCLUSION............................................................................................. 5

i

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ............................................................................... 1, 2, 3, 5

*Lane v. Cacace,*
  No. 22-CV-10989 (KMK), 2025 WL 903766 (S.D.N.Y. Mar. 25, 2025)......................... 3

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ..................................................................................4, 5

*Nat'l Assoc. for Gun Rights v. Lamont,*
  685 F. Supp. 3d 63 (D. Conn. 2023) ............................................................ 3

*United States v. Hemani,*
  146 S. Ct. 1677 (2026)..............................................................................1, 4, 5

*Wolford v. Lopez,* 609 U.S. ---,
  2026 WL 1825723 (June 25, 2026) .................................................... 1, 2, 3, 4

**Other Authorities**

*American Dictionary of the English Language* (1828) ................................................. 2

The individual right to self-defense is the "central component" of the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). Americans' right to purchase, possess, and use arms for self-defense—including purely defensive arms—is explicitly protected against government infringement. New York's ban on ordinary, law-abiding citizens purchasing purely defensive arms is unconstitutional.

The United States Supreme Court recently issued two Second Amendment opinions, *United States v. Hemani*, 146 S. Ct. 1677 (2026), and *Wolford v. Lopez*, 609 U.S. ---, 2026 WL 1825723 (June 25, 2026), which further confirm that the State Defendants are fundamentally wrongheaded in their application of *Heller* and *Bruen* here.

## I. The "plain text" threshold inquiry does not involve questions about common use.

*Wolford* left no doubt that in Second Amendment cases, the plaintiffs' burden is merely to meet a threshold inquiry of whether the restricted conduct falls within the "plain text" of the Amendment. *Wolford*, at *6. Nevertheless, the State Defendants would have this Court expand this "plain text" threshold inquiry to encompass an empirical question of whether body armor "is in common use" by law-abiding citizens, improperly attempting to shift this burden onto Plaintiffs. State's Reply Br. (Dkt. No. 83), at 6.

*Wolford* is emphatic, however, that these "common use" considerations "are out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's 'plain text." *Wolford*, at *10. The State Defendants ask this Court to "smuggle additional limits, drawn from our regulatory tradition into the plain-text stage of the inquiry," but "[t]he answer *is and always has been no*." *Id.* at *14 n.1 (Barret, J., concurring) (emphasis added). Indeed, as Justice Jackson explained in her dissent, applying *Bruen* requires that "at step one, courts must look *only* to the 'plain

text' of the Second Amendment." *Id.* at *26 (Jackson, J., dissenting) (emphasis in original).

The State Defendants contend that the Second Circuit has already smuggled into the threshold inquiry the burden of proving through experts, witnesses, and vast empirical data, etc., that body armor is in common use. State's Reply Br., at 6 (citing *Gomez*, *Calce*, and *NAGR v. Lamont*). While this tactic was always contrary to *Heller, Bruen*, and *Rahimi*, it was again squarely rejected by the Supreme Court in *Wolford*—and to the extent that the Second Circuit has required it, that requirement is clearly abrogated by *Wolford*. Plaintiffs' *only* burden is the plain text threshold inquiry. *Wolford*, at *10. The State Defendants' contention that Plaintiffs' failed to prove "common use" is therefore irrelevant. It was never the Plaintiffs' burden to do so.

## II.    Armor is an arm.

The State Defendants would have this Court completely ignore that *Heller* expressly concluded that the plain text of "Arms" encompasses not just weapons, but also "armour of defence" and "any thing that a man wears for his defence." 554 U.S. at 581. *Heller* also cited Webster's 1828 Dictionary, which gave as its first definition of arms "weapons of offense, or armor for defense and protection of the body." *American Dictionary of the English Language* (1828). The State Defendants now contend that *Wolford* somehow narrowed *Heller*'s definition to only encompass "weapons", State's Reply Br., at 6, as if *Heller*'s express references to "armour of defence" were mere surplusage. The State Defendants' mistake is laid bare in *Wolford* itself, which affirmatively reiterates "'Arms,' we have explained, refers to *implements* used for offense *or defense*." *Wolford*, at *4 (emphasis added).

It is unremarkable that in other places, *Wolford* (and *Heller*) interchanged "arms" with "weapons", since those cases concerned weapons. Just as easily, when facing a case like this

2

that concerns only "armour of defence," the Court can certainly interchange "armor" for "arms" and remain squarely within the plain text of the Second Amendment, because *Heller* expressly encompassed armor within the meaning of "Arms." *Heller*, 554 U.S. at 581; *see also Lane v. Cacace*, No. 22-CV-10989 (KMK), 2025 WL 903766, at *6 (S.D.N.Y. Mar. 25, 2025) ("In *Heller*, the Supreme Court defined arms by referring to the term's 18th century meaning— 'weapons of offence, or armour of defence,' or 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'"); *Nat'l Assoc. for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 79 (D. Conn. 2023) ("When interpreting" the term "arms," the *Heller* Court "relied on dictionaries from the Founding era defining [them] as 'weapons of offence, or armour of defence,' or as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another'" (cleaned up)). Contrary to the State Defendants' preferences, armor is an arm.

III.    ***Wolford* and *Hemani* confirmed Plaintiffs' articulation of *Bruen*'s historical analysis—*i.e.*, "step two" of the *Bruen* test—and confirmed that the State's historical analogues must meet the "how and why" standard, which they do not.**

*Wolford* and *Hemani* reiterated and clarified the analogical burden the State must satisfy under *Bruen*'s historical inquiry. When considering a government's proffered historical analogues, courts must first look at "the number of jurisdictions in which they were adopted" and "the extent to which they were well-accepted." *Wolford*, 2026 WL 1825723, at *6. And because the Second Amendment analysis "seek[s] the general understanding of that codified right," it follows that "[a]n outlier legal rule adopted in a few locales is not enough." *Id.* at *11. The Body Armor Ban is the quintessential outlier, well-outside the mainstream tradition.

Not only is the Body Armor Ban a true one-of-a-kind outlier, but the State's proffered analogues fail to meet the "how and why" standard. A historical analogue must be

3

"widespread, well-known, and widely accepted," *id.* at *14, but even then, it must also be sufficiently tailored to the modern conduct the government seeks to regulate. The analogue must be "relevantly similar" to a modern law based on "how" and "why" they restrict Second Amendment protected conduct. *Id.* at *6. *Hemani* illustrates the point. The Court found that "the government's analogy fails" because "the historical laws on which it relies targeted different kinds of people, did so for different reasons, and operated in different ways." 146 S. Ct. at 1694. Similarly, as explained in Plaintiffs' opposition, at 31-33, the State Defendants' analogues—from the English Monarchs to a few early affray laws—concern wearing armor and weapons in public to terrorize the people with evil intent or malice. The Body Armor Ban by contrast prohibits the purchase, sale, and use of body armor by law abiding citizens for ordinary self-defense needs anywhere, even inside the home, and regardless of intent, a markedly different "how and why" from the State's analogues.[1] And as in *Hemani*, the Body Armor Ban targets different kinds of people—the general public without evil intent or malice, who just want body armor for self-defense—than the State Defendants' proposed analogues.

Plaintiffs' conduct here is clearly protect by the Second Amendment, because the Ban restricts Plaintiffs' ability to possess constitutionally protected arms, so it is the State Defendants' burden to prove that body armor is not in "common use," but is instead "highly unusual in society at large." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 47 (2022). The State Defendants did not adduce evidence to prove this, failing to carry their burden, and their motion for summary judgment should therefore be denied.

## IV.    *Hemani* confirmed the Court's rejection of the State's interest balancing.

Unable to identify relevant historical analogues that could situate the one-of-a-kind

---

[1] The State already criminalizes use of body armor during commission of violent felonies (Penal Law § 270.20), which is not at issue here.

Body Armor Ban in the well-established mainstream tradition of American arms regulation, the State Defendants instead argue that the Ban should be saved because mass shooters and other criminals can also use body armor when committing violent crimes. The State Defendants ignore *Heller*'s explicit rejection of "judge-empowering 'interest-balancing inquir[ies]'" that would weigh criminal misuse of arms against the rights of law-abiding citizens. 554 U.S. at 534. The Supreme Court has repeatedly rejected the State Defendants' proposed interest-balancing approach, *e.g.*, *Bruen*, 597 U.S. at 22-23, which was further confirmed in *Hemani*, 146 S. Ct. at 1698 (Jackson, J., concurring) (noting the Court's explicit rejection of means-end scrutiny).

In culmination, the State Defendants improperly attempt to balance away the constitutionally protected right of law-abiding individuals to possess purely defensive arms. Perhaps most poignantly, the State Defendants ignore the constitutionally protected right of parents to buy, for example, Kevlar plates for a child's backpack to protect their loved one from the very same mass shooter risk the State Defendants emphasize—just like parents all around the country outside of New York have done. *E.g.*, Dkt. No. 71, at 18 (uptick in sales of bulletproof backpacks after school shootings). Tragic mass shooting events cannot be a justification for depriving law-abiding citizens of the means to protect themselves and their loved ones from the criminals perpetrating such tragedies.

### V.    CONCLUSION

The Court should grant judgment in Plaintiffs' favor, deny Defendants' motions, declare the Body Armor Ban unconstitutional, and enjoin its enforcement.

Respectfully Submitted,                         FLUET

Dated:  McLean, Virginia                   By: /s/ *Nicolas J. Rotsko*
       July 31, 2026                              Nicolas J. Rotsko, Esq.

                                          1751 Pinnacle Drive
                                          Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
nrotsko@fluet.law
*Attorney for Plaintiffs*