UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENJAMIN HEETER and
FIREARMS POLICY COALITION, INC.

Plaintiff,

vs.

LETITIA JAMES
STEVEN G. JAMES
MICHAEL J. KEANE

Defendants.

**SUPPLEMENTAL BRIEF**

**Civil Action No.: 1:24-cv-00623-JLS**

This supplemental brief is submitted on behalf Defendant District Attorney Micheal Keane upon the instruction of this Honorable Court issued during oral arguments on August 28, 2026. During those arguments, the Court posed a question to the effect of "can something, once encompassed, by the Second Amendment later fall outside of the Second Amendment?"[1] This brief is intended to answer the Court's question.

**ARTILLERY**

There is no question that in the Founding Era, the private ownership of artillery was widespread. *See United States v Charles*, 633 F Supp 3d 874, 885 (WD Tex 2022) *see also United States v Bridges*, 150 F4th 517, 535 (6th Cir 2025) (concurrence in part) ("[c]annons were also privately owned at this time."). The private ownership of artillery was enjoyed not only on land, but at sea, where it was encouraged by the federal government, especially at times of war, when letters of marque were issued essentially as licenses to arm ships and engage in

[1] The transcript of the arguments is not yet available, so the Court's question is paraphrased to the best of counsel's ability.

legalized piracy against the nation's enemies. *See Charles* at 885. Counsel has been unable to find caselaw explicitly protecting the private ownership of artillery as a Second Amendment right. Undoubtedly, though, in their time, these were legal cannons.

However, today, under the *Heller* and *Bruen* framework, it appears that the private ownership of artillery is not protected under the Second Amendment. *Heller* held that the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *D.C. v Heller*, 128 S Ct 2783 (2008) The Court further held, "the sorts of weapons protected were those 'in common use at the time,'" and that limitation "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller* at 2817. *Bruen* reiterated that the Second Amendment protects only weapons "in common use at the time," as opposed to those that "are highly unusual in society at large" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022).

The Supreme Court has not directly addressed the question of private ownership of artillery, but it has mused upon the question. "Of course, we might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in *Freed.*" *Staples v United States*, 114 S Ct 1793, 1800 (1994) *referencing United States v Freed,* 91 S Ct 1112 (1971). While these cases pre-date *Heller* and *Bruen*, they have been cited subsequent to those cases in lower courts: "[h]istory and tradition leave no doubt that certain weaponry is for the state only: weapons such as the grenades, the machineguns, the artillery pieces, and the like

mentioned in *Staples." Bevis v City of Naperville, Illinois*, 85 F4th 1175, 1201 (7th Cir 2023) *referencing Staples v United States*, 114 S Ct 1793, 1800 (1994).

Federal law classifies a "destructive device" as any weapon that expels a projectile by explosive action and has a barrel bore of more than one-half inch in diameter. *See* 26 USCA §5845(f) and 18 USCA §921(a)(4)(B). This definition encompasses all artillery. However, artillery manufactured before 1898, or replicas thereof, are classified as "antique firearms" and exempted, by statute, from the prohibitions on destructive devices— provided the antique firearm is not capable of firing modern "fixed ammunition" or be readily convertible to fire fixed ammunition. 18 USCA §921(a)(3), 18 USCA §921(a)(16).

Based on this research there is not a black letter answer to the question of whether the private ownership of artillery was once protected by the Second Amendment but is no longer. However, the evidence implies that there once was a Second Amendment right to own artillery, as suggested by its widespread private ownership in the Founding Era. Modern case law has not directly addressed the issue of whether there is a Second Amendment right to own artillery, but any reasonable application of the controlling *Heller*/*Bruen* analysis would indicate there exists no such right today because artillery is not a weapon that is in common use at this time; is highly unusual; and it is certainly a "dangerous and unusual weapon."

**BAYONETS**

A bayonet is a knife, dagger, sword, or spike-shaped melee weapon designed to be mounted on the end of the barrel of a rifle, carbine, musket or similar long firearm, allowing the gun to be utilized as a spear in close combat. *See* Brayley, Martin, *Bayonets: An Illustrated History,* Krause Publications (2004) pp. 9-10. Like cannons, bayonets were commonly

privately-owned in the early Republic. While there has not been any state or federal law specifically banning the private ownership of bayonets, there have been state and federal laws banning certain “military-style features” from semi-automatic firearms, notably, the since-lapsed federal assault weapons ban and statutes in New York and Connecticut. *See New York State Rifle and Pistol Ass'n, Inc. v Cuomo*, 804 F3d 242, 248 (2d Cir 2015). Included on the list of “military-style features” was the bayonet mount. While one may certainly still own a bayonet, even under the New York and Connecticut statutes, the ability to use a bayonet is severely limited without the ability to mount said bayonet.

The New York law was challenged primarily for its ban on high-capacity magazines, and the constitutionality of the bulk of the law was upheld by the Second Circuit. *Id.* at 269. Bayonet mounts, therefore, remain illegal on semi-automatic weapons in New York. The tension, here, may be because the bayonet, is on its own a weapon; however, it is a weapon functionally useless without a bayonet mount. Meanwhile, a bayonet mount is generally classified as an option or tactical accessory, rather than an integral component to a firearm. While there is a circuit split on the issue, the courts have generally held that accessories fall outside of the Second Amendment. *See Duncan v Bonta,* 133 F4th 852 (9th Cir 2025) (large capacity magazines are accessories, rather than arms) *see also United States v Cox,* 906 F3d 1170 [10th Cir 2018] (silencer is firearm accessory, and not a weapon in itself, and is not a “bearable arm” protected by the Second Amendment) *see also United States v Speed*, 175 F4th 272, 289 (4th Cir 2026) (concurrence) (“Utility alone cannot confer protection on a dangerous, unnecessary accessory. The Second Amendment does not extend that far.”)

Like in the case of artillery, counsel was unable to find caselaw directly asserting the constitutionality of private ownership of bayonets in either the Revolutionary Era or 14th Amendment Era. Likewise, counsel was unable to find caselaw directly exempting bayonets from Second Amendment protection; however, the existence of a statute effectively prohibiting their useful employ implies that they are outside of the protections set forth in *Heller*.

## CONCLUSION

The Court's question has proven to be incisive, as there appears to be no clear answer to it. Counsel has been unable to find a definitive example of a weapon enjoying, then losing Second Amendment protection. However, there are at least two examples of weapons which were once commonly privately owned which now enjoy, at best, uncertain constitutional protections.

DATED: Buffalo, New York
September 1, 2026

Yours truly,

JEREMY C. TOTH
Erie County Attorney
Attorney for Defendants,

By: Christopher J. Sasiadek
Christopher J. Sasiadek
Assistant County Attorney, of Counsel
95 Franklin Street, Room 1634
Buffalo, New York 14202
(716) 858-2200